UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE ANNE PETELLE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 16 C 4208<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Anne Petelle ("Plaintiff" or "Ms. Petelle") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"),[1] denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings, including entry of final judgment. (Dkt. 7).

For the reasons stated below, Plaintiff's motion for remand (Dkt. 11) is granted in part and the Commissioner's motion for summary judgment (Dkt. 12) is denied in part. The case is remanded for further proceedings consistent with this Opinion.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. BACKGROUND

Ms. Petelle applied for disability insurance benefits when she was 55 years old. (R. at 170–71). She previously worked as an office clerk and nurse case manager. (*Id*. at 36). On July 9, 2014, Ms. Petelle testified at a hearing before the ALJ. (*Id*. at 44). The ALJ also heard testimony from Mr. James Breen, a vocational expert. (*Id*. at 170–73).

The pertinent facts are as follows. Since August 2012, Ms. Petelle has been under the care of psychiatrist Dr. Nadeem Hussain, M.D. (*Id*. at 60, 252). Dr. Hussain diagnosed Ms. Petelle with major depressive disorder and generalized anxiety disorder with irritability. (*Id*. at 252, 495). Office visit records in September and October of 2012 from Ms. Petelle's treating physician, Dr. Ronald Severino, M.D., show a diagnosis of generalized anxiety disorder and major depressive disorder, recurrent episode, unspecified, hypersomnia, organic, and memory loss. (*Id*. at 274, 279–94).[2] On March 12, 2013, Ms. Petelle attended a psychological consultative examination with Gregory Rudolph, Ph.D., Licensed Clinical Psychologist, at the request of the Bureau of Disability Determination Services (BDDS) (*Id*. at 434–37). Dr. Rudolph diagnosed major depression and history of posttraumatic stress- sexual abuse as a child, and assessed a Global Assessment of Functioning (GAF) score of 45 for Ms.

---

[2] Major depressive disorder is characterized by "decreased physical, social, and role functioning." *American Psychiatric Association,* Diagnostic and Statistical Manual of Mental Disorders 371 (4th ed. 2010) (hereafter, "*DSM-IV*"). Generalized anxiety disorder can "impair your ability to perform tasks quickly and efficiently because you have trouble concentrating; take your time and focus from other activities; sap your energy; and disturb your sleep." Mayo Clinic, Generalized Anxiety Disorder. (available online at http://www.mayoclinic.org/diseases-conditions/generalized-anxiety-disorder/basics/complications/con-20024562, last visited March 19, 2017).

Petelle. (*Id*. at 434). Dr. Rudolph found that Ms. Petelle's prognosis and insight are "limited." (*Id*.). On the same date, Roopa Karri, M.D. also examined Ms. Petelle at the request of the BDDS. (*Id*. at 440–43). Dr. Karri noted that Ms. Petelle had a history of depression. (*Id*. at 443). Dr. Karri observed that Ms. Petelle "had occasional problems finding words." (*Id*. at 441–42). Dr. Karri's mental status examination (MSE) of Ms. Petelle found her to be "alert and oriented in all 3 spheres." (*Id*. at 443).

On July 16, 2013, Dr. Hussain's MSE of Ms. Petelle noted that Ms. Petelle's behavior was "restless and fidgety and tics of neck and lower face. Cooperative." (*Id*. at 494–95). Her mood was "anxious and less sad and anxious." Her affect "increased in intensity, increased in range and mood-congruent. Reactive." (*Id*. at 495). Dr. Hussain prescribed Cymbalta 60 mg daily for depression and anxiety. She discussed with Ms. Petelle an increase in Cymbalta to 90 mg and noted that Ms. Petelle has withdrawal symptoms if she skips a day. (*Id*.) Dr. Hussain also prescribed trazadone and gabapentin for anxiety and insomnia. (*Id*.). Dr. Hussain's notes under suicidal ideation stated that Ms. Petelle had intermittent thoughts that "it would not be bad if I stopped breathing altogether." (*Id*. at 496). In March and October of 2013, two non-examining psychologists opined that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace. (*Id*. at 82, 94).

On March 20, 2014, Dr. Severino noted Ms. Petelle's cognitive disorder, mood problem, anxiety problem, memory loss, and excessive sleepiness. (*Id*. at 518). He

Page **3** of **17**

assessed depressive disorder, not elsewhere classified. (*Id.* at 525). Dr. Severino's examination found: "her speech is normal and behavior is normal. Judgment and thought content normal. Her mood appears anxious. Her affect is not angry and not labile. She exhibits a depressed mood. She expresses no suicidal plans. She exhibits normal recent memory and normal remote memory." (*Id.*).

## II. PROCEDURAL HISTORY

On November 14, 2012, Ms. Petelle protectively filed an application for disability insurance benefits, claiming a disability onset date of October 1, 2012. (R. at 24, 170–71). On September 24, 2014, the ALJ issued a written decision denying Plaintiff's application for benefits finding that she was not disabled under the Social Security Act. (*Id.* at 24–37). The opinion followed the five-step sequential evaluation process required by the Social Security Regulations. 20 CFR § 404.1520. The ALJ initially noted that Ms. Petelle met the insured status requirements of the Social Security Act through December 31, 2016. (*Id.* at 26). At step one, the ALJ found that Ms. Petelle had not engaged in substantial gainful activity since the alleged onset date of October 1, 2012. (*Id.*) At step two, the ALJ found that Ms. Petelle had the severe impairments of degenerative disc disease and gait disorder with Parkinsonism. (*Id.*) The ALJ found that Ms. Petelle's mental impairment of depression, however, was "nonsevere." (*Id.* at 28). At step three, the ALJ found that Ms. Petelle did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (*Id.* at 29).

Before step four, the ALJ found that Ms. Petelle has:

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can frequently crouch; occasionally climb ramps and stairs, stop, and crawl; and never climb ladders, ropes, or scaffolds. She can frequently, but not repetitively, finger bilaterally.

(*Id.* at 29–30). Based on this residual functional capacity ("RFC"), the ALJ determined at step four that Ms. Petelle was able to perform her past relevant work of a nurse case manager. (*Id.* at 36). Based on this determination, the ALJ concluded that Ms. Petelle was not disabled under the Social Security Act. (*Id.*) The Social Security Appeals Council subsequently denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1–6). Plaintiff now seeks review in this Court pursuant to 42 U.S.C. § 405(g).

### III. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Counsel denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). The district court reviews the decision of the ALJ, limiting its review to a determination of whether the ALJ's findings of fact are supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). In addition, the ALJ must explain her analysis of the evidence "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). When the ALJ recommends a denial of benefits, the ALJ "must first build an accurate and logical bridge from the evidence to the conclusion." *Berger v.*

*Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations and citation omitted). This means that the ALJ "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Id*. A Commissioner decision that lacks evidentiary support or adequate discussion of the issues will be remanded. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV. DISCUSSION

Plaintiff objects to the ALJ's decision on four grounds: (1) the ALJ's RFC finding is not supported by substantial evidence because it did not consider Plaintiff's need for a cane; (2) substantial evidence did not support the ALJ's finding that Plaintiff's mental impairments are "nonsevere"; (3) the ALJ improperly assigned "great weight" to the opinion of a non-acceptable medical source; and (4) the ALJ did not consider Plaintiff's excellent work history as part of her credibility assessment. The Court agrees that the ALJ erred in her analysis of Plaintiff's mental limitations.

### A. The RFC Did Not Properly Account for Plaintiff's Mental Impairment

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see also* Social Security Ruling (SSR) 96-8p, at *2 (an RFC assesses "physical or mental limitations or restrictions that may affect [an individual's] capacity to do work-related physical and mental activities."). It is based on medical evidence and other evidence such as tes-

timony. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). The ALJ, in determining a person's RFC, must evaluate "all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563. Upon finding that one or more impairment is severe, the ALJ must "consider the *aggregate* effect of this entire constellation of ailments-- including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). The ALJ's hypothetical question to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

In this case, the ALJ failed to fully consider the effects of Plaintiff's mental illness on her ability to work. The ALJ's decision to not to include any mental limitation in Plaintiff's RFC is not supported by substantial evidence, requiring remand.

### 1. The ALJ did not build a logical and accurate bridge from the medical evidence to her conclusions

The ALJ erred by failing to build a logical bridge from the evidence to her conclusions. First, the ALJ did not explain why she did not include any mental limitation in Plaintiff's RFC. The ALJ stated only that Plaintiff's depression "does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." (R. at 27). "Mental limitations must be part of the RFC assessment, because '[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pres-

sures in a work setting, may reduce [a claimant's] ability to do past work and other work.'" *Craft*, 539 F.3d at 676 (quoting 20 CFR § 404.1545(c). The ALJ found Plaintiff had mild limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, and pace. (R. at 28). But those limitations were not factored into the RFC. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) (remanding because mild limitations in these three areas "should have been reflected as limitations in the RFC finding"); *see also Alesia v. Colvin*, No. 12 C 8395, 2015 U.S. Dist. LEXIS 112862, at *23 (N.D. Ill. Aug. 26, 2015) (a finding of non-severity of depression did not, on its own, support the ALJ's conclusion that no further limitations in claimant's work-related activities were warranted).

Second, the ALJ erred in rejecting the GAF score assessed by consultative examiner, Dr. Rudolph. GAF scores indicate a "clinician's judgment of the individual's overall level of functioning." *DSM-IV* at 32.[3] Plaintiff's GAF score of 45 indicates "serious symptoms…or any serious impairment in social, occupational, or school functioning." *Id.* at 34. Because the GAF score reflects both "severity of symptoms and functional level," but not a doctor's opinion of functional capacity, the ALJ was not required to rely on the score as dispositive of Plaintiff's disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citations omitted). Nevertheless, the ALJ's cursory rejection of the GAF rating was improper. Plaintiff's low GAF score, in the context of other evidence in the record, suggests a lower level of functioning than was captured in the ALJ's RFC, which did not include any mental limi-

---

[3] The American Psychiatric Association no longer uses the GAF metric. *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014).

Page 8 of 17

tation. *See Yurt v. Colvin*, 758 F.3d 850, 859–60 (7th Cir. 2014) (criticizing the ALJ's "larger general tendency to ignore or discount evidence favorable to Yurt's claim.").

The ALJ rejected the GAF rating because it was not a longitudinal assessment and was contradicted by Plaintiff's statements and testimony about her daily activities and lifestyle. (R. at 29). A GAF score may be a "snapshot of a particular moment," but that does not mean it should be disregarded. *See Sambrooks v. Colvin*, 566 F. App'x 506, 511 (7th Cir. 2014) (the ALJ should have explained "why he chose not to take those scores into account when he rejected Dr. Howard's opinion"). The ALJ cannot discount Dr. Rudolph's assessment as representing a single point in time when the agency hired him only to evaluate Ms. Petelle during a single visit. Even if the ALJ's decision to give the GAF rating "little weight" was correct, the explanation provided is not sufficient. The ALJ did not address Dr. Rudolph's report as a whole or whether his report and the GAF rating were consistent with other medical evidence and opinions in the record.[4] Moreover, if the ALJ needed a "longitudinal picture" of Ms. Petelle's mental functioning, she did not explain why she did not consider Ms. Petelle's relationship with Dr. Hussain. And if more explanation was needed from any doctor, the ALJ was responsible for developing the record. *See Virden v. Colvin*, No. 14-cv-1219, 2015 U.S. Dist. LEXIS 126316, at *26-27 (C.D. Ill. Sep. 21, 2015) (citing *Selby v. Barnhart*, 48 F. App'x 576, 581 (7th Cir. 2002).

---

[4] The parties dispute whether Dr. Rudolph's assessment of Plaintiff limitations in "more advanced adaptive skills" and limited prognosis and insight constituted a "medical opinion." (R. at 434, 436). Because the Court concludes that the ALJ erred in her cursory treatment of the GAF score and Dr. Rudolph's report, the Court need not decide whether these other statements were "medical opinions."

Page **9** of **17**

The ALJ's reasoning that the GAF score contradicted Plaintiff's statements about her daily activities and lifestyle also is not supported by substantial evidence. The ALJ concluded that Ms. Petelle's limitations in daily activities "appear to be related more to her physical condition than mental restrictions." (R. at 28). But the ALJ did not specify which limitations she was referring to or offer any further explanation. The ALJ's focus should have been on the effect of Ms. Petelle's depression on her mental functioning, "including [her] abilities to concentrate, perform work tasks without constant supervision, maintain a consistent pace, and work around and with other persons. Whether or not [she] can pop a frozen dinner into the microwave or occasionally clean the litterbox is irrelevant." *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016). The ALJ thus failed to address the "critical differences" between activities of daily living and those in a full-time job. *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016); *see also Childress v. Colvin*, No. 16-1601, 2017 U.S. App. LEXIS 141, at *9 (7th Cir. Jan. 4, 2017) (critiquing the "fail[ure] to recognize the difference between performing activities of daily living with flexibility (and often with help from family and friends) and performing to the standards required by an employer.") (internal citations and quotations omitted).

Third, the ALJ did not sufficiently explain the weights given to the different medical opinions. The ALJ explained the "great weight" given to two non-examining consultants by generally citing to "evidence received into the record." (R. at 29). These consulting doctors saw Ms. Petelle in March and October of 2013, so their assessments did not account for all of the medical evidence, such as Dr. Severino's

treating records in February and March 2014 and evaluation in March 2014. (R. at 479–89, 518–36). On the other hand, the ALJ gave Dr. Rudolph's GAF rating "little weight" without acknowledging that under the Social Security regulations, as a psychological consultant, he is considered "highly qualified" and an "expert[] in Social Security disability evaluation," and because he examined Ms. Petelle, his opinions should be given "more weight." 20 CFR §404.1527(e)(2)(i) and (c)(1). Further, as discussed below, the ALJ did not address Ms. Petelle's treating psychiatrist, Dr. Hussain. A treating physician opinion is generally entitled to controlling weight, and if the ALJ does not give a treater's opinion controlling weight, she must determine what weight to give it and provide "sound explanation" and "good reasons" for this determination. 20 CFR § 404.1527(c)(2); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011); *Collins v. Astrue,* 324 F. App'x 516, 520 (7th Cir. 2009).[5] As Plaintiff points out, the ALJ gave "great weight" to a note by a nurse that the ALJ construed as a medical opinion of Dr. Johnson. (R. at 34). The Commissioner concedes this was a mistake (Dkt. 13 at 10). Even so, the ALJ did not explain why a vague statement about Plaintiff returning to work on "modified duty" (R. at 429) is a "medical opinion" deserving of great weight, or why she believed this opinion deserved more weight than Plaintiff's other treating doctors' opinions. In any case, the ALJ's reli-

---

[5] "[W]e will evaluate every medical opinion we receive." 20 CFR § 404.1527(c). A treating physician is familiar with the claimant's condition and progression of her impairments and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 CFR §404.1527(c)(2). The factors to be evaluated include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; explanations for the opinions; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. 20 CFR § 404.1527(c)(2).

ance on this statement further demonstrates the ALJ's tendency to select portions of the record to support her own conclusions.

The Commissioner contends that the consulting psychologists' opinions deserved great weight because they were consistent with findings of "normal speech; good insight and judgment; cognition grossly intact; logical, linear and goal-directed thought process…normal behavior; and normal recent and remote memory." (Dkt. 13 at 5). However, the Commissioner, like the ALJ, selectively cites the portions of the record, discussed further below. The ALJ also was required to, but did not, explain the weight based on factors such as the consultant's medical specialty and expertise in the Social Security rules, the supporting evidence in the case record and supporting explanations provided. 20 CFR § 404.1527(a)-(e).

### 2. The ALJ hand-picked certain evidence while disregarding other critical evidence

The Seventh Circuit has "repeatedly forbidden ALJs from cherry-picking only the medical evidence that supports their conclusion." *Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015) (internal citations and quotations omitted). Cherry-picking is particularly problematic when it comes to mental illness. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.") (citations omitted).

Dr. Hussain was Plaintiff's treating psychiatrist from August 2012 until at least February 2015. (R. at 60, 252). Dr. Hussain diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder with irritability. (*Id*. at 252, 495). Dr.

Hussain reported that Ms. Petelle "has follow-up appointments on a regular basis to address her diagnoses [and] is compliant with my treatment plan." (R. at 252). Despite the evidence of ongoing treatment by Dr. Hussain, both the ALJ and the Commissioner failed to discuss Ms. Petelle's relationship with Dr. Hussain. (*see* Dkt. 13).

Nevertheless, the ALJ selectively cited portions of Dr. Hussain treatment records to support the ALJ's conclusions that the record contained "significant inconsistencies" and Plaintiff's "treatment has been generally successful in controlling [her] symptoms." (*see* R. at 31–32). The ALJ stated that Plaintiff testified that her "psychotropic medication helped her 'pretty well' [and] she has not sought regular mental health treatment." (*Id*. at 27). But the ALJ did not explain why Ms. Petelle's visits to Dr. Hussain every three months (*id*. at 61) and Dr. Hussain's report of seeing Ms. Petelle on "a regular basis" (*id*. at 252), did not constitute "regular mental health treatment."

The ALJ cited the portion of Dr. Hussain's October 1, 2013 MSE of Ms. Petelle which noted that her cognition was grossly intact, judgment and insight good, and thought process logical. (R. at 477). But the same MSE stated that Ms. Petelle's psychomotor activity was "increased and restless," her behavior was "restless and fidgety," her mood "anxious and less sad and anxious," her affect "increased in intensity, increased in range and mood-congruent. Reactive." (*Id*.). The ALJ also failed to note that Dr. Hussain recommended Ms. Petelle increase her prescription of Cymbalta for depression and anxiety to 90mg/day, and continue her 25-50mg/day

Page **13** of **17**

of trazadone for insomnia. (*Id.*) The ALJ also relied on Ms. Petelle's neurologist Dr. Martha McGraw's August 2013 MSE of Plaintiff which appeared normal, but did not address Dr. McGraw's description of Plaintiff's depression and anxiety as "worse." (R. at 502–3). Similarly, the ALJ relied on Dr. Severino's notes in March 2014 that Plaintiff's speech and behavior were normal, but did not acknowledge his observations that Plaintiff's mood was anxious and depressed. (*Id.* at 533).

An ALJ must consider all relevant evidence, and may not disregard certain evidence or discuss only the evidence that favors her decision. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Here, the ALJ's selective reliance on certain records while ignoring Plaintiff's other treatment records demonstrates that the ALJ's decision not to include any mental limitation in Plaintiff's RFC is not supported by substantial evidence.

### 3. The ALJ's error was not harmless

The Commissioner contends that any error by the ALJ did not prejudice Plaintiff's case. (Dkt. 13 at 7). But the ALJ's failure to include any mental limitation in Plaintiff's RFC was not harmless. Plaintiff's RFC allowed her to do only sedentary, skilled work. The question that the ALJ posed to the VE at the hearing did not "fully set forth the claimant's [mental] impairments." *See Herron*, 19 F.3d at 337. As the VE answered the ALJ's question at the hearing, if Plaintiff was limited to unskilled work, she would "grid out at that point." (R. at 72). In other words, under the agency's medical vocational guidelines 201.06, Plaintiff would be found to be disabled if she were limited to sedentary, unskilled work. *See Cheatham v. Berryhill*,

No. 15-cv-1382-JPG-CJP, 2017 U.S. Dist. LEXIS 19239, at *16 (S.D. Ill. Feb. 10, 2017) ("The failure to consider whether plaintiff suffered from any mental limitations is particularly egregious in this case. Because of her age, if plaintiff were limited to sedentary work at the unskilled level, she would be deemed disabled.") (citing 20 C.F.R. § 404.1568(d)(4); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(d)).

**B. The ALJ is not required to revisit Plaintiff's use of the cane on remand**

The Court affirms the ALJ's decision solely with regard to Plaintiff's use of a cane. Plaintiff insists that the ALJ must make a finding regarding Plaintiff's need for a cane. But Plaintiff does not point to any medical record demonstrating that the cane was medically necessary or the circumstances in which the cane was necessary, and the Court has not identified such a record. Further, the case law in the Seventh Circuit does not support Plaintiff's argument.

In *Tripp v. Astrue*, 489 F. App'x 951 (7th Cir. 2012), the Seventh Circuit acknowledged that "no published appellate decision addresses the precise documentation a claimant must provide" to demonstrate the need for an assistive device. Nevertheless, the Seventh Circuit followed Third and Tenth Circuit decisions that required an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." Not finding such a statement in the record, the Seventh Circuit affirmed the ALJ. "Tripp was not restricted to the use of a hand-held assistive device: although the ALJ noted that Tripp sometimes *used* crutches, he never acknowledged that Tripp *needed* them." *Id*. at 945 (emphasis in original). This is similar to the present case—the ALJ acknowledged Plaintiff

sometimes used a cane, but did not find she *needed* it. *See also Powers v. Colvin*, No. 1:15-CV-01835-SEB-MJD, 2016 U.S. Dist. LEXIS 124929, at *19 (S.D. Ind. Aug. 25, 2016) ("claimant must provide specific, unambiguous evidence of the circumstances in which the cane is medically necessary."); *Cf. Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (remanding for the ALJ to decide whether claimant needed a cane in order to stand or walk because the ALJ did not address the "extensive other evidence concerning Thomas's need for a cane, including…Dr. Feldman's notes describing repeated falls by Thomas and his prescription for a cane…"). After a thorough review of the record, the Court does not find any unambiguous indication from a physician in the record stating that Plaintiff needs a cane. The ALJ's decision in this regard is affirmed.

## C. Conclusion

In sum, because the ALJ relied on certain evidence while disregarding other evidence, and failed to build an "accurate and logical bridge" between the evidence of mental impairments and the hypothetical posed to the VE and the resulting RFC, remand is required. Because the Court is remanding on the mental impairment issue, and affirming on the cane issue, the Court will not to address Plaintiff's other arguments. On remand, after fully considering the effect of Plaintiff's mental illness on her ability to work, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse the ALJ's decision and remand for additional proceedings [11] is **GRANTED** in part. The Commissioner's motion for summary judgment [12] is **DENIED** in part. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 3, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge